**UNITED STATES BANKRUPTCY COURT**                    FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 7 |
| KOSSOFF PLLC, | Case No. 21-10699 (DSJ) |
| Debtor. | |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | Adv. Pro. No. 22-01141 (DSJ) |
| v. | |
| ERNEST PEREVOSKI, TERRI ABBEY, HUI-FONG LEE, JOHN BOSWELL, EQUITY TRUST COMPANY, PETER XENOPOULOS, P. XENOPOULOS REALTY, LLC, RONNY MINTZ, CHALRON ENTERPRISES LTD., PAMELA KOSSOFF, in her capacity as executor of the estate of Phyllis Kossoff, | |
| Defendants. | |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | Adv. Pro. No. 22-01146 (DSJ) |
| v. | |
| PAMELA KOSSOFF, in her capacity as executor of the estate of Phyllis Kossoff, | |
| Defendant. | |

1

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

|  |  |
|---|---|
| Plaintiff, | Adv. Pro. No. 22-01113 (DSJ) |

v.

VNB NEW YORK LLC, VALLEY
NATIONAL BANK, MITCHELL H.
KOSSOFF and PAMELA KOSSOFF, in her
capacity as executor of the estate of Phyllis
Kossoff,

Defendants.

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

|  |  |
|---|---|
| Plaintiff, | Adv. Pro. No. 22-01158 (DSJ) |

v.

ROC LE TRIOMPHE ASSOCIATES LLC,
HAMPTON MANAGEMENT COMPANY
LLC, and MITCHELL H. KOSSOFF,

Defendants.

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

|  |  |
|---|---|
| Plaintiff, | Adv. Pro. No. 23-01004 (DSJ) |

v.

MICHAEL BESEN, 34447 EQUITIES, INC.;
and ALEC KOSSOFF,

Defendants.

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                    Plaintiff,

            v.                                    Adv. Pro. No. 23-01095 (DSJ)

COLUMBUS PROPERTIES, INC.; and
COLONNADE MANAGEMENT, CORP.,

                    Defendants.

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                    Plaintiff,                    Adv. Pro. No. 23-01021 (DSJ)

            v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA; and PRUCO LIFE
INSURANCE COMPANY OF NEW
JERSEY,

                    Defendants.

| | |
|---|---|
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | Adv. Pro. No. 23-01127 (DSJ) |
| v. | |
| SALLY E. UNGER, and THE SALLY E. UNGER FAMILY TRUST, | |
| Defendants. | |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | Adv. Pro. No. 23-01023 (DSJ) |
| v. | |
| COLGATE UNIVERSITY, and JEREMY KOSSOFF, | |
| Defendants. | |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 23-01105 (DSJ) |
| HAVERFORD COLLEGE, | |
| Defendant. | |

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                    Plaintiff,

        v.

FORDHAM UNIVERSITY SCHOOL OF
LAW, FORDHAM UNIVERSITY, and
JEREMY KOSSOFF,

                    Defendants.

Adv. Pro. No. 23-01155 (DSJ)

---

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                    Plaintiff,

        v.

EPRODIGY FINANCIAL, LLC, CAPITAL
STACK, LLC, and ACH CAPITAL, LLC,

                    Defendants.

Adv. Pro. No. 23-01109 (DSJ)

---

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                    Plaintiff,

        v.

QUEEN FUNDING, LLC,

                    Defendant.

Adv. Pro. No. 23-01110 (DSJ)

5

| | |
|---|---|
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC,<br><br>Plaintiff,<br><br>v.<br><br>TIGER CAPITAL GROUP LLC,<br><br>Defendant. | Adv. Pro. No. 23-01111 (DSJ) |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC,<br><br>Plaintiff,<br><br>v.<br><br>UNIQUE FUNDING SOLUTIONS, LLC,<br><br>Defendant. | Adv. Pro. No. 23-01112 (DSJ) |
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC,<br><br>Plaintiff,<br><br>v.<br><br>BMF ADVANCE, LLC,<br><br>Defendant. | Adv. Pro. No. 23-01113 (DSJ) |

6

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                              Plaintiff,           Adv. Pro. No. 23-01114 (DSJ)

      v.

CEDAR ADVANCE, LLC,

                              Defendant.

---

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                              Plaintiff,

      v.                                    Adv. Pro. No. 23-01115 (DSJ)

ELITE ENTERPRISES OF NY, INC.,

                              Defendant.

---

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

                              Plaintiff,           Adv. Pro. No. 23-01094 (DSJ)

      v.

BLOOMINGDALES, INC.; and PAMELA
KOSSOFF,

                              Defendants.

ALBERT TOGUT, Not Individually but
Solely in His Capacity as Chapter 7 Trustee
of the Estate of Kossoff PLLC,

Plaintiff,

v.

CITIBANK, N.A., and PAMELA KOSSOFF,

Defendants.

Adv. Pro. No. 23-01096 (DSJ)

**DECISION ON TRUSTEE'S APPLICATION FOR AN ORDER (I) DETERMINING DEBTOR'S PREPETITION TAX LIABILITY TO THE IRS, (II) DETERMINING THE PRIORITY STATUS OF THE DEBTOR'S PREPETITION TAX LIABILITY TO THE IRS, AND (III) ALLOWING THE AMENDED IRS PROOF OF CLAIM**

New York real estate attorney Mitchell Kossoff ("**Mr. Kossoff**") ran a law firm called Kossoff PLLC. He took advantage of his access to client and other funds to misappropriate an amount not less than $14 million. As a result, he has been disbarred and convicted of fraud and grand larceny. He is now incarcerated by New York State.

Predictably, Kossoff PLLC (the "**Debtor**") entered Chapter 7 bankruptcy proceedings. Albert Togut in his capacity as Chapter 7 Trustee (the "**Trustee**") of the Debtor's bankruptcy estate now faces the challenging task of tracing and recovering misappropriated or otherwise recoverable funds. The Trustee has commenced more than 50 adversary proceedings seeking to secure the turnover of funds that Mr. Kossoff allegedly unlawfully transferred or that are otherwise recoverable on behalf of the estate and its creditors.

This decision resolves an issue with great significance to the Trustee's ability to recover assets to compensate Mr. Kossoff's victims. For legal reasons explained below, many of the transfers occurred long enough ago that the Trustee may avoid them only if the Court determines that the Debtor owed tax obligations collectible as of the date of the Debtor's bankruptcy

8

petition. The Trustee and the Internal Revenue Service (the "**IRS**") agree that the Debtor had tax obligations extending back far enough to justify recovery of transfers that would not be avoidable but for the Debtor's tax liabilities. Throughout the bankruptcy case, Mr. Kossoff, proceeding pro se, has raised a number of issues, and he specifically questions whether the IRS has a viable claim such that it qualifies as a triggering creditor.

To resolve this significant issue, the Trustee has brought a motion (the "**Motion**" or "**Mot.**") seeking an order determining the Debtor's prepetition tax liability to the IRS, for the purpose of establishing the IRS's viability as a triggering creditor whose claim, if allowed, would support the Trustee's efforts to recover earlier transfers than could otherwise be avoided. Seven parties in interest, including Mr. Kossoff, have opposed the Motion. The remaining six opponents (collectively with Mr. Kossoff, the "**Opponents**") are defendants in adversary proceedings brought by the Trustee for which the IRS serves as a "predicate" or "triggering" creditor under 11 U.S.C. § 544(b)(1). The Opponents other than Mr. Kossoff are:

1) Columbus Properties, Inc. and Colonnade Management, Corp. (collectively, "**Columbus**"), defendants in *Togut v. Columbus Props., Inc.*, No. 23-01095.

2) Peter Xenopoulos and P. Xenopoulos Realty, LLC (collectively, "**Xenopoulos**"), defendants in *Togut v. Perevoski*, No. 22-01141.

3) Citibank, N.A. ("**Citi**"), defendant in *Togut v. Citibank, N.A.*, No. 23-01096.

4) Bloomingdale's Inc. ("**Bloomingdale's**"), defendant in *Togut v. Bloomingdale's Inc.*, No. 23-01094. Citi and Bloomingdale's share counsel and present the same arguments.

The Trustee filed the Motion in the main bankruptcy proceeding, *In re Kossoff PLLC*, No. 21-10699,[1] and in every adversary proceeding "in which the Trustee's complaint includes causes of action that rely upon the IRS and its liability as a predicate liability." Tr. 30:9-11, ECF No. 807. The Opponents filed objections, and the Court held an evidentiary hearing on September 18, 2024. After the hearing, the parties filed post-hearing briefs.

For reasons explained below, the Court concludes that the IRS has a valid claim for the 2015 tax year. The Court reaches this conclusion based largely on the documentary record.

## JURISDICTION

This Court has jurisdiction to decide the motion under 28 U.S.C. §§ 157, 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(B) because it places the amount of a claim in question. As discussed *infra*, the Court rejects all arguments that 11 U.S.C. § 505(a)(2)(A) has stripped it of jurisdiction to decide the Motion because the Court concludes no prior adjudication of the tax liability at issue has occurred within the meaning of that subsection.

## BACKGROUND

As more generally described in this decision's introduction, Mr. Kossoff served as the principal of the Debtor, a now-closed law firm specializing in real estate matters. Creditors of the Debtor commenced the main bankruptcy case on April 13, 2021 (the "**Petition Date**") by filing an involuntary chapter 7 petition after discovering that Mr. Kossoff may have misappropriated client funds held in the firm's IOLA account.

Mr. Kossoff pled guilty to New York State criminal charges alleging that he had misappropriated at least $14 million in client funds. Judge Peterson of the New York Criminal

---

[1] Unless otherwise noted, all citations to the docket refer to the docket in *In re Kossoff PLLC*, No. 21-10699. Citations to the transcript of the evidentiary hearing held on the Motion read "Tr." followed by a pincite.

Court sentenced him to a period of incarceration, and he now participates in these proceedings pro se while he serves his sentence. Mr. Kossoff was disbarred in March 2022.

The Trustee has brought dozens of adversary proceedings to recover funds for the Debtor's bankruptcy estate. The Trustee's power to bring many of those cases arises from 11 U.S.C. § 544(b)(1), which states in relevant part, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." On February 10, 2022, the IRS filed an unsecured claim in this case, Claim 37-1 (the "**Original Claim**"), asserting that the Debtor owed tax liabilities from 2015. Original Claim, TX-1. On February 5, 2024, the IRS filed an amended claim, Claim 37-2 (the "**Amended Claim**" or "**Am. Claim**" and together with the Original Claim, the "**IRS Claims**"). Am. Claim, TX-2. The IRS Claims arise from 2015 withholding and FICA tax liabilities imposed by I.R.C. §§ 3101 and 3401 that the IRS alleges the Debtor failed to pay. *See* Original Claim; Am. Claim. As discussed below, employers report withholding and FICA tax liabilities on the same form, Form 941.

For many of the adversary proceedings brought by the Trustee, the IRS serves as the only relevant alleged "creditor holding an unsecured claim that is allowable under section 502" as required by 11 U.S.C. § 544(b)(1).

The IRS Claims arise from two tax assessments, one from March 28, 2016 (the "**Reported Liability**" or the "**March 28, 2016 Assessment**") and the other from March 19, 2019 (the "**Assessed Liability**" or the "**March 19, 2019 Assessment**"). Only the Assessed Liability appears on the Original Claim; the Amended Claim includes the Reported Liability and the Assessed Liability. *Compare* Original Claim at 4 *with* Am. Claim at 4.

**FACTS**

11

## A. The Reported Liability and the Disputed Payment

The Reported Liability arose from the Debtor's Amended Form 941 filed with the IRS and covering the fourth quarter of 2015 (the "**Q4 2015 Form 941**"). Q4 2015 Form 941, TX-9. Per the IRS website, "Employers [like the Debtor] use Form 941 to [r]eport income taxes, Social Security tax, or Medicare tax withheld from employee's [sic] paychecks" among other things. *About Form 941, Employer's Quarterly Federal Tax Return*, IRS (Sept. 16, 2024), https://www.irs.gov/forms-pubs/about-form-941. On its Q4 2015 Form 941, the Debtor disclosed that it had accrued $382,503.49 in tax liability because it had failed to make deposits of funds to pay withholding and FICA taxes during the fourth quarter of 2015. Q4 2015 Form 941. IRS transcripts show that the Debtor filed this amended return on February 6, 2016, Q4 2015 IRS Transcript at 2, TX-10; the IRS assessed $382,503.48 due on March 28, 2016, *id.*

The Debtor filed its Amended Form 941 for the first quarter of 2016 on June 7, 2016 (the "**Q1 2016 Form 941**"). *See* Q1 2016 IRS Transcript, TX-39. The next day, the Debtor paid $110,330.94 (the "**Disputed Payment**") to the IRS. *Id.* at 2. That week, the IRS applied this payment towards the Debtor's first-quarter 2016 withholding and FICA tax liabilities. *See* BMF Payment Summary at 4, TX-40 (BMFPG 008, showing a $110,330.94 payment made towards liability for tax period "201603" during the twenty-third week of 2016); Sylvia Decl. ¶ 15(a), ECF No. 766 (explaining the meaning of these codes in the IRS's records). Mr. Kossoff also stated he originally intended for this payment to cover the Debtor's tax liabilities for the first quarter of 2016. Tr. 222:10-14.

On June 22, 2016, IRS personnel prepared a notice of federal tax lien to encumber the Debtor's property because part of the Reported Liability remained outstanding, Notice of Federal Tax Lien, TX-28; the IRS placed this lien on the Debtor's property on July 1, 2016, *see* Q4 2015

IRS Transcript at 2. On July 12, 2016, Mr. Kossoff wrote to the IRS regarding this lien and referred to the Disputed Payment as "unassigned," but his letter did not instruct the IRS to apply the Disputed Payment towards the Reported Liability. July 12, 2016 IRS Fax, TX-29. However, the IRS did not finish processing the Q1 2016 Form 941 until 2018, Q1 2016 IRS Transcript at 2, and therefore, during the third quarter of 2016, the IRS shifted the application of the Disputed Payment to partially cover the Reported Liability. *See* BMF Payment Summary at 4; Sylvia Decl. ¶ 15(b). The Debtor made a further payment towards the Reported Liability of $116,160.79 on October 6, 2016. Q4 2015 IRS Transcript at 2. By October 26, 2016, the IRS had released any liens it held on the Debtor's property. October 24, 2016 Fax from Anthony Tradachino to Mitchell H. Kossoff attaching October 17, 2016 Certificate of Release of Lien, TX-47; October 26, 2016 Certificate of Release of Federal Tax Lien, TX-48.

In the thirteenth and fourteenth weeks of 2018, the IRS shifted the credit resulting from the Disputed Payment from covering the Reported Liability back to covering the Debtor's withholding and FICA tax liabilities for the first quarter of 2016. BMF Payment Summary at 4; Sylvia Decl. ¶ 15(c). The IRS took this action around when it finished processing the Q1 2016 Form 941 on April 23, 2018; at that time, the IRS assessed $110,330.93 in additional taxes for the first quarter of 2016, Q1 2016 IRS Transcript at 2, one cent less than the Disputed Payment the Debtor had originally made to the IRS when filing the Q1 2016 Form 941. The IRS accordingly reapplied the Disputed Payment so that it now covered the Debtor's newly-assessed first-quarter 2016 withholding and FICA tax liabilities. BMF Payment Summary at 4; Q1 2016 IRS Transcript at 2. In light of this change in the period for which the IRS credited the Disputed Payment, the IRS subsequently sent a notice dated May 7, 2018 stating the Debtor owed $110,330.97 in Form 941 taxes for the 2015 tax period now that the Disputed Payment no longer covered the Debtor's 2015

tax obligations. *See* May 17, 2018 Notice of Intent to Seize (Levy) Your Property or Rights to Property, TX-18. Well before this bankruptcy case commenced, Mr. Kossoff responded for the Debtor on September 12, 2018, acknowledging that the IRS had at one point erroneously applied the Disputed Payment which was properly "allocable to 2016 payroll tax." *See* September 12, 2018 Letter from M. Kossoff to Dept. of Treasury, TX-19 ("[I]n releasing the prior lien, you erroneously credited to my account tax payments by this office allocable to 2016 payroll tax. I am in agreement that this error did occur.").

**B.  The Assessed Liability**

The Assessed Liability arose from a Combined Annual Wage Reporting ("**CAWR**") audit performed by the Internal Revenue Service and the Social Security Administration in 2018 and the first quarter of 2019. *See* June 27, 2018 IRS Letter, TX-31; March 19, 2019 Assessment, TX-11; Tr. 139:14-140:1. The IRS and the Social Security Administration compared the wages paid and taxes withheld by the Debtor in 2015 as reported on its Forms W-2 and W-3 with the 2015 wages paid and taxes withheld that the Debtor reported on its Forms 941. That comparison, confirmed by the Trustee's reconciliation, found a roughly $555,000 discrepancy in the wages reported and proportional discrepancies in taxes owed, including a $112,072.39 discrepancy in reported employee income taxes withheld. Trustee Reconciliation of 2015 Form W-2s to 2015 Form W-3, TX-15; Trustee's 2015 Tax Assessment Reconciliation, TX-16. The IRS made the March 19, 2019 Assessment based on that discrepancy. Tr. 139:14-140:1; June 27, 2018 IRS Letter; March 19, 2019 Assessment. Mr. Kossoff responded to the March 19, 2019 Assessment by letter on June 4, 2019, disputing its validity but not providing any argument or documentation to support his position. June 4, 2019 Letter from M. Kossoff to Dept. of Treasury, TX-12. Other than the

14

Disputed Payment, the Debtor made payments totaling $326,160.79 towards satisfying the Assessed Liability and the Reported Liability. Q4 2015 IRS Transcript at 2-3.

## ARGUMENTS, DISCUSSION, AND ANALYSIS

### A.  The Trustee Has the Power to Bring the Motion

The Opponents challenge the Trustee's power to bring the Motion. They argue that the Trustee lacks authority under the Bankruptcy Code to move to allow claims. *See* 11 U.S.C. § 704(a) (imposing duties upon the Trustee and nowhere mentioning a power or duty to move to allow claims); *In re Padget*, 119 B.R. 793, 798 (Bankr. D. Colo. 1990) ("Consequently, a trustee should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors."); *id.* ("It is not a trustee's duty to protect individual creditors against the consequences of failing to file a claim, filing a late claim, filing an insufficient claim, or failing to properly assert a deficiency claim. It is a trustee's principal duty to object to unsubstantiated, excessive, or unallowable claims."); *In re Lyon*, No. 11-50343, 2011 WL 5299229, at *2 (Bankr. W.D.N.C. Nov. 2, 2011) ("In fact, section 704 of title 11 ('Duties of trustee') gives trustees the duty to oppose insufficient claims rather than attempt to rehabilitate them."); *In re Leavell*, 141 B.R. 393, 400 (Bankr. S.D. Ill. 1992) ("As the primary objecting party, a Chapter 7 trustee has an adversarial relationship with individuals filing claims in an insufficient manner."). This argument fails for two reasons.

First, the IRS first filed the Amended Claim, and then the Trustee moved for a determination of the Debtor's tax liabilities. *Compare* Am. Claim at 3 (dated February 3, 2024) *with* Mot. (dated February 8, 2024). The Trustee has authority under 11 U.S.C. § 704(a)(5) to examine proofs of claim, and the Trustee is not the first Chapter 7 trustee to have moved in court for a determination of a debtor's tax liabilities. *See In re Vale*, 180 B.R. 1017, 1019 (Bankr. N.D.

Ind. 1994) ("On January 31, 1994, the Trustee filed a Motion with this Court for the determination of taxes and penalties due by the bankruptcy estate of the Debtors to the IRS[.]"). In addition, as discussed in the next section, this Court has authority under 11 U.S.C. § 505(a) to determine the Debtor's tax liabilities. Second, the procedural posture of this motion has arisen because the Opponents in substance object to the IRS Claims but failed to formally bring claims objections. Under normal circumstances, this Court would deem the as-filed IRS Claims allowed under 11 U.S.C. § 502(a) given the absence of objections. Here, however, the Court authorized the Trustee to seek a determination of the IRS Claims and authorized any interested party to oppose such a motion because doing so was the only feasible way to determine a key question in many cases brought by the Trustee. That is because the unusual circumstances of this case give the Trustee an economic incentive not to challenge the IRS Claims on which many of the Trustee's recovery efforts rely, while judicial efficiency and party resource conservation were best served by creating a coordinated way for any affected party to litigate the IRS Claims' validity.

## B.  This Court Has the Power to Determine the Amount of Taxes Due

Bloomingdale's and Citi argue that the prepetition letters between the Debtor and the IRS and the Certificates of Release of Federal Tax Lien amount to a "contest[ation] before and adjudicat[ion of the IRS Claims] by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case." 11 U.S.C. § 505(a)(2)(A). Such an adjudication would strip this Court of jurisdiction to determine the amount of the IRS Claims. *See id.*; *Cody, Inc. v. County of Orange* (*In re Cody, Inc.*), 338 F.3d 89, 95 (2d Cir. 2003) (defining 11 U.S.C. § 505(a)(2)(A) as jurisdictional). Bloomingdale's and Citi not only fail to grapple with this Court's precedents interpreting that section but also overstretch the holdings of the out-of-district cases they cite, making their arguments unpersuasive.

"In the context of § 505(a)(2)(A), adjudication has been defined as being 'synonymous with adjudge in its strictest sense.'" *Delafield 246 Corp. v. City of New York* (*In re Delafield 246 Corp.*), 368 B.R. 285, 293 (Bankr. S.D.N.Y. 2007) (quoting *IRS v. Teal* (*In re Teal*)*,* 16 F.3d 619, 621 (5th Cir. 1994)). "[A] matter has been adjudicated when a judgment of a court of competent jurisdiction has been decreed." *Id.* At most, the Debtor once made a request for a Collection Due Process hearing with the IRS and then withdrew its request before such hearing ever occurred. *See* October 24, 2016 Fax from Anthony Tradachino to Mitchell H. Kossoff attaching October 17, 2016 Certificate of Release of Lien. Nothing in the record suggests that the Debtor ever presented any of its prepetition tax issues to a court or even an administrative tribunal for review, let alone that any such court or tribunal handed down a judgment as contemplated by this Court's precedent.

Even if this Court adopted the out-of-district cases cited by Bloomingdale's and Citi as its guiding authorities, this Court would not rule that an adjudication of the Debtor's tax liability occurred prepetition. In each one of the cases cited by Bloomingdale's and Citi to support their argument, the debtor had initiated a proceeding before a tribunal and at least either appeared before it in the proceedings, received a judgment of some nature from it, or agreed to a settlement after bringing the contest. *In re R.R. St. P'ship*, 255 B.R. 644, 646 (Bankr. N.D.N.Y. 2000) ("[T]he Debtor previously appeared before the City of Syracuse Board of Assessment Review ('Assessment Board') contesting the tax assessments on the Properties pursuant to Article 5 of New York Real Property Tax Law ('NYRPTL'). . . . Debtor's counsel does not deny that the Debtor was represented by counsel and appeared at the hearings."); *Northbrook Partners LLP v. County of Hennepin* (*In re Northbrook Partners LLP*), 245 B.R. 104, 112–13 (Bankr. D. Minn. 2000) (with respect to all tax liabilities for which the court held 11 U.S.C. § 505(a)(2)(A) barred bankruptcy court review, the state court had entered either a stipulated judgment or a default

against the debtor); *In re Crest-Mex Corp.*, 223 B.R. 681, 682–83 (Bankr. S.D. Tex. 1998) (with respect to all tax liabilities for which the court held 11 U.S.C. § 505(a)(2)(A) barred bankruptcy court review, the debtor had filed petitions for review with the county appraisal review board and then agreed to formal settlements with such review board). The Debtor did none of these things. No evidence shows the Debtor contesting its tax liability prepetition in front of a judicial or administrative tribunal, let alone litigating that dispute to a judgment or reaching a negotiated settlement. Furthermore, no faithful interpretation of the statute's text could find that the mere filing of a federal tax lien or a withdrawal thereof counts an adjudication under 11 U.S.C § 505(a)(2). The Opponents have cited no cases in which a court advanced such an interpretation, and such an interpretation would clash with this Court's precedent and with the statutory text. Thus, this Court has jurisdiction to determine the amount of the IRS Claims.

**C.  This Court Will Exercise Its Discretion to Determine the Debtor's Tax Liability**

This Court may abstain from exercising its jurisdiction to determine a debtor's tax liabilities. *See New Haven Projects, LLC v. City of New Haven* (*In re New Haven Projects, LLC*), 225 F.3d 283, 288 (2d Cir. 2000) ("[W]e interpret the verb 'may' in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes."). Neither the Trustee, nor the IRS, nor the Opponents have asked this Court to abstain from such exercise. The Court concludes that "the need to administer the bankruptcy case in an expeditious fashion" and "the potential prejudice to the debtor, the taxing authority, and creditors," *id.* at 289, make exercising such jurisdiction prudent. In fact, the Court views issuance of this decision as a key step towards resolving Debtor's and the estate's affairs.[2]

---

[2] This motion seeks determination of the Debtor's tax liability under 11 U.S.C. § 505(a). Had the Opponents filed formal objections to either of the IRS Claims in *In re Kossoff PLLC*, No. 21-10699, the Court would follow the burden-shifting methodology under which "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion," and "[t]he burden then shifts to the claimant if the

18

**D.  The Trustee and the IRS Have Put Forth Competent Evidence to Support the Motion**

While the parties have stipulated that the exhibits produced for the evidentiary hearing are authentic, Tr. 33:14-15,[3] the Opponents present three arguments against the Motion that stem from the law of evidence:

1.  Neither Mr. Gray, the Trustee's financial advisor, nor Ms. Sylvia, the IRS's witness, have personal knowledge of the underlying facts.

2.  Neither Mr. Gray nor Ms. Sylvia qualify as experts.

3.  The records put forth by the Trustee and the IRS are inadmissible hearsay. They cannot qualify for the business records exception because they have been shown to be unreliable.

These arguments fail. As an initial matter, "[a] proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). No Opponent has alleged that the IRS failed to execute and file either of the IRS Claims in accordance with the Federal Rules of Bankruptcy Procedure.

**1.  Ms. Sylvia and Mr. Gray Do Not Need Personal Knowledge and They Did Not Testify as Expert Witnesses**

The Opponents issued subpoenas to the Trustee and the IRS under Rule 30(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7030 of the Federal Rules of Bankruptcy Procedure, rather than under the expert discovery rules. Trustee's

---

objector produces evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Motors Liquidation Co.*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (quoting *In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)).

[3] Ms. Sylvia also declared under penalty of perjury that the IDRS Transcripts, BMF Payment Summary, and March 19, 2019 Assessment produced as exhibits to her Declaration are true and correct copies of those records. *See* Sylvia Decl. ¶¶ 5, 11, 15, 21, ECF No. 766. On direct examination, she stated that her declaration constituted her direct testimony. Tr. 74:18-75:1. The Court received her declaration and the exhibits in question into evidence. *Id.* 81:25-82:2.

Reply ¶ 31, ECF No. 768. None of the objecting parties have contradicted this. "Rule 30(b)(6) deponents need not have personal knowledge concerning the matters set out in the deposition notice." *Alheid v. Target Corp.*, No. 16 Civ. 6980 (HBP), 2017 WL 4174929, at *1 (S.D.N.Y. Aug. 29, 2017) (quoting *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 07-CV-930 (GEL), 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009)). Ms. Sylvia needs only familiarity with IDRS generally, not personal knowledge of the entire history of the Debtor's tax account, to authenticate the records at issue and testify competently to their meaning and accuracy. *United States v. Wales*, No. 14 Civ. 864 (GWG), 2017 WL 2954683, at *6 (S.D.N.Y. July 11, 2017) ("[F]amiliarity with IDRS allows her to establish that the records kept by the IRS are accurate, notwithstanding her lack of personal involvement in the defendants' particular accounts." (citing *United States v. Rozbruch*, 28 F. Supp. 3d 256 (S.D.N.Y. 2014))). Ms. Sylvia performed a "review of pertinent IRS records relating to Debtor's tax liability" and "reviewed the IRS's records regarding Debtor's withholding tax (Form 941) liability for the fourth quarter of 2015." Sylvia Decl. ¶ 2. Her review qualifies her as a witness; she did not need to have served as the Debtor's prepetition account officer to present competent testimony under Rule 30(b)(6). Similarly, "[w]hile her testimony relates to the operation of a computer system, this fact alone does not turn her testimony into an expert 'opinion.'" *Wales*, 2017 WL 2954683, at *6 (citing *United States v. Wilson*, 408 F. App'x 798, 808 (5th Cir. 2010) ("[T]estimony about a computer may suggest technical expertise, but that does not necessarily mean such testimony requires satisfying the standard for expert testimony.")). The Opponents sought testimony from Mr. Gray and Ms. Sylvia under Rule 30(b)(6), so this Court will not ex-post subject them to the inapplicable standards for expert testimony. Further, as ordinary, individual-capacity fact witnesses, Mr. Gray and Ms. Sylvia are competent to

authenticate records and establish their admissibility as IRS business records, which the Court sees as the decisive evidence. They have authenticated these records. *See* Sylvia Decl. ¶¶ 5, 11, 15, 21.

### 2.   The IRS Records Put Forward Are Admissible

IDRS transcripts qualify for the government records exception to the hearsay rule. *See Wales*, 2017 WL 2954683, at *5 ("[A] computer printout of a taxpayer's transcript of account, absent a showing of irregularity, provides sufficient verification of the taxpayer's outstanding liability." (quoting *United States v. Martynuk*, No. 13 Civ. 4110 (KPF), 2015 WL 328100, at *5 (S.D.N.Y. Jan. 26, 2015))); *Sedlmayr v. United States*, No. 4:18-CV-1826 (RLW), 2020 WL 6683069, at *8 (E.D. Mo. Nov. 12, 2020) ("IDRS transcripts are government business records that are admissible under the public records exception to the hearsay rule, and the Court may rely on these records for purposes of summary judgment." (citing *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) (internal citations omitted))).

The Court rejects Columbus's assertion that IRS "blunders" compromise the admissibility of the IRS's records because the alleged "blunders" indicate a "lack of trustworthiness" under Fed. R. Evid. 803(6)(E) or other provisions of the Federal Rules of Evidence. Columbus advances several reasons to justify denying government-records recognition to the IRS records in this case but supports them with no caselaw, and none of the reasons Columbus asserts undercut the records' evidentiary value. Of those reasons, the three that allege mistakes in the IDRS transcripts are themselves mistaken. Regarding the IDRS transcripts, Columbus first argues "[t]he IRS Account Transcript for 2016 shows the initial Q1 2016 return was filed February 22, 2016, although there is no record of an actual return having been filed on that date." Columbus Post-Trial Br. at 32, ECF No. 814. The transcript records no such thing. The only activity the Q1 2016 Form 941 tax account transcript recorded on February 22, 2016 was a tax deposit of $33,120.95. *See* Q1 2016

IRS Transcript. It would also make no sense for the Debtor to file a tax return covering the whole

first quarter of 2016 before that quarter had ended. Similarly, Columbus states, "The initial Q1

2016 return was actually filed March 28, 2016, although no entry on the 2016 account transcript

says that," and cites a section of Ms. Sylvia's deposition to that effect. Columbus Post-Trial Br. at

32 (citing Sylvia Decl. Ex. 1 143:15-25). Columbus errs once again. The transcript records no such

thing, *see* Q1 2016 IRS Transcript, the filing of a tax return for a period before that period ended

likely would make no sense, and the section of Ms. Sylvia's deposition that Columbus cites

discusses the Q4 2015 Form 941, not the Q1 2016 Form 941. *See* Sylvia Decl. Ex. 1 at 136:7-22.

In fact, the transcript in question records no activity at all on March 28, 2016. *See* Q1 2016 IRS

Transcript. Columbus third argues "The Account Transcripts failed to show Mr. Kossoff's July

12[,] 2016 letter concerning the $110,000.00 payment [or] his agreement with Agent Rufus to

reallocate it." Columbus Post-Trial Br. at 33. The relevant IDRS transcripts for the fourth quarter

of 2015 and first quarter of 2016, together with the BMF Payment Summary, line up in showing

the IRS applying the Disputed Payment to the withholding and FICA tax liabilities for the first

quarter of 2016, then shifting it to cover the Reported Liability, and then shifting it back. *See* Q4

2015 IRS Transcript at 2; Q1 2016 IRS Transcript at 2; BMF Payment Summary at 4. The

transcript's failure to note Mr. Kossoff's letter does not undercut its reliability as a record of

payments and return filings. Furthermore, Columbus cannot argue the IDRS transcripts lack

reliability because they fail to record an alleged agreement between Mr. Kossoff and Agent Rufus

of the IRS of which no written proof has surfaced. As noted below, Mr. Kossoff needed to submit

instructions in writing to bind the IRS to a given allocation of the Disputed Payment.

Columbus presents additional arguments against admitting the IRS records, all of them

meritless: First, Columbus argues that because "[t]he IRS cannot explain why it took two years to

process the Q1 2016 amended return and issue an assessment, when that normally takes six to

eight weeks," this Court cannot rely on the IDRS transcripts. This argument does not weaken the

IDRS transcripts as a reliable source, because the IRS still processed this return and issued a timely

assessment. *See* Q1 2016 IRS Transcript at 2 (showing filing of the amended return occurred no

later than June 7, 2016 and assessing $110,330.93 due for the first quarter of 2016 on April 23,

2018); I.R.C. § 6501(a) ("[T]he amount of any tax imposed by this title shall be assessed within 3

years after the return was filed."). Second, the failure to produce the Q1 2016 Form 941 does not

make the records the IRS produced unreliable; the tax transcript for that period records it as filed

on June 7, 2016. *See* Q1 2016 IRS Transcript at 2. Third, contrary to Columbus's assertions, the

IRS did provide a record of the application of the Disputed Payment. *See* BMF Payment Summary

at 4. Fourth, the Trustee's failure to produce a wire confirmation or check showing the Debtor

made the Disputed Payment does not damage the IRS records' credibility. The IRS records show

the Debtor made the Disputed Payment. *See* Q4 2015 IRS Transcript at 2; Q1 2016 IRS Transcript

at 2; BMF Payment Summary at 4. Furthermore, Columbus's entire argument depends upon the

Debtor having made the Disputed Payment – if the Debtor failed to make it, no one could argue

the Debtor ever satisfied the Reported Liability. Fifth, the Trustee's failure to produce records from

ADP, the Debtor's payroll processor, has no bearing on the reliability of IRS records. Lastly, Ms.

Sylvia's concession that the Automated Proof of Claim module did not initially produce an

accurate claim, Tr. 94:23-96:1, does not imply that the Court may not rely on the IDRS transcripts

and the BMF Payment Summary. Ms. Sylvia's declaration and her subsequent testimony, which

discuss her analysis and findings, explain the IRS's application of the Disputed Payment over time.

*See, e.g.*, Sylvia Decl. ¶¶ 8-17. Having checked the IDRS transcripts, the Debtor's Forms 941, W-

2, and W-3, and the reconciliation of the Debtor's prepetition liability to the IRS as conducted by

the Trustee, the Court accepts as accurate the Amended Claim. The Court overrules any objections

to the Motion that stem from the law of evidence.

Having analyzed the tax reporting documents sent by the Debtor to the IRS at the relevant

times prepetition and concluded they evidence the assessments shown in the IDRS transcripts, the

Court finds the IRS's internal documentation of the Debtor's tax account reliable. Columbus once

questioned the accuracy of the calculations conducted by the Trustee and the IRS, *see* Columbus

Prelim. Obj. ¶¶ 12-18, ECF No. 709, and the Court rejects Columbus's argument. "[I]t is well

established that the IRS's tax calculations (including calculations of interest and penalties) are

presumptively valid and create a *prima facie* case of liability," which stands unless one of the

Opponents "overcomes the presumption by the IRS that the assessment is correct." *Nassar Fam.*

*Irrevocable Tr. v. United States*, No. 13 Civ. 5680 (ER), 2016 WL 5793737, at *12 (S.D.N.Y.

Sept. 30, 2016) (internal quotations omitted), *aff'd in part, appeal dismissed in part sub nom.*

*United States v. Nassar*, 699 F. App'x 46 (2d Cir. 2017). The burden rests on Columbus to prove

the IRS incorrectly calculated the Reported Liability or the Assessed Liability, *United States v.*

*Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005), *aff'd*, 274 F. App'x 56 (2d Cir. 2008), and

Columbus has not met this burden.

Columbus's math goes wrong when it states that the $386,524.70 in Social Security taxes

that the Debtor reported it withheld on its 2015 Forms 941 amounts to 12.4% of the $3,470,441.46

in Social Security wages the Debtor reported on its 2015 Forms W-2. *See* Columbus Prelim. Obj.

¶ 16. From that point forward, the Court cannot follow Columbus's calculations. By contrast, the

tax documents and analysis produced by the Trustee and the IRS show a discrepancy of at least

$171,967.75 between Debtor's tax liability as reported on its 2015 Forms 941 and its tax liability

as reported on its 2015 Forms W-2 and W-3, just one cent lower than the amount of the underlying

tax assessed on the March 19, 2019 Assessment. *See* Q1 Form 941 for 2015, TX-3; Q2 Form 941

for 2015, TX-4; Q3 Form 941 for 2015, TX-5; Q4 2015 Form 941; Kossoff PLLC 2015 Form W-

3, TX-13; Compilation of Kossoff PLLC 2015 Form W-2s, TX-14; Trustee Reconciliation of 2015

Form W-2s to 2015 Form W-3; March 19, 2019 Assessment.

## E.   The IRS Had the Authority to Allocate the Disputed Payment as It Did

As noted above, the IRS first applied the Disputed Payment to cover the Debtor's first-

quarter 2016 withholding and FICA tax liabilities, then reallocated it to cover the Reported

Liability, and then shifted it back. The Opponents argue that the IRS had no authority to shift it

back.

The Internal Revenue Code allows a taxpayer to designate the period to which a deposit of

taxes shall apply, but only if the taxpayer does so within 90 days after the date of a notice that a

penalty has been imposed for the specified tax period to which the deposit relates. I.R.C. § 6656(e).

IRS revenue procedures require that any such designation be in writing. Rev. Proc. 2002-26, 2002-

1 C.B. 746, § 3.01 ("If additional taxes, penalty, and interest for one or more taxable periods have

been assessed against a taxpayer (or have been mutually agreed to as to the amount and liability

but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that is accepted

by the Service and the taxpayer provides specific written directions as to the application of the

payment, the Service will apply the payment in accordance with those directions."); Rev. Proc.

2002-26, 2002-1 C.B. 746, § 3.02 ("If additional taxes, penalty, and interest for one or more taxable

periods have been assessed against a taxpayer (or have been mutually agreed to as to the amount

and liability but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that

is accepted by the Service and the taxpayer does not provide specific written directions as to the

25

application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest.").

The IRS's Notice of Intent to Levy dated September 29, 2016 states that the IRS had imposed penalties of $8,983.68, thus implying the 90-day countdown under I.R.C. § 6656(e) ended no later than December 28, 2016.[4] *See* Sept. 29, 2016 Final Notice, TX-30. The only written communication in evidence from Mr. Kossoff to the IRS that mentions the Disputed Payment before the countdown period ended occurred on July 12, 2016, and it states "[a]s you know, there is a dispute as to whether any money is owed at this juncture. You yourself indicated yesterday that you were advised that there was an unassigned payment of over $100,000.00, which we decided to figure out once my bookkeeper returned next week." July 12, 2016 IRS Fax. The document does not otherwise mention the Disputed Payment, and its language does not direct the Disputed Payment's application.

The documentary record thus shows that the IRS, over three years before the Petition Date, had settled on applying the Disputed Payment towards the Debtor's withholding and FICA tax liabilities for the first quarter of 2016 rather than the Reported Liability. In his cross-examination, Mr. Kossoff admitted, against his interest in this case, that allocating the Disputed Payment to the Debtor's withholding and FICA tax liabilities for the first quarter of 2016 had been his original intent when he paid it. Tr. 222:10-13 ("Q: So when you made that initial payment of 110,000 dollars, it was your intention that it was going to be used to satisfy your liability for the 2016 return, right? A: Yes. But you know and I know that my intention can change. And I have a right

---

[4] Mr. Kossoff admits that he "received such a penalty notice from the IRS . . . on May 2, 2016." Kossoff IRS Mot. Obj. at 6, ECF No. 715. He attaches a letter showing he received such notice. *See* Kossoff IRS Mot. Obj. Ex. D. Thus, the 90-day countdown of I.R.C. § 6656(e) likely in fact began on May 2, 2016. However, the parties have not agreed on the admissibility of that letter, and even if the Court admitted that letter as evidence Mr. Kossoff received notice of the penalties on May 2, 2016, it would make no difference to this Court's conclusion. The July 12, 2016 IRS Fax is the only written communication from the Debtor to the IRS that mentions the Disputed Payment before I.R.C. § 6656(e)'s 90-day countdown definitively ended on December 28, 2016.

in circumstances to allocate, even if I previously designated a payment for 2016, under certain circumstances, I have the right to reallocate that to a prior tax liability."). Mr. Kossoff alleges that his faxed letter of July 12, 2016 amounts to an instruction to apply the Disputed Payment towards the Reported Liability. *See* Kossoff Post IRS Hr'g Submission ¶¶ 13-15, ECF No. 825. That faxed letter gives no instruction to the IRS regarding application of the Disputed Payment; at most, it describes the Disputed Payment as "unassigned." July 12, 2016 IRS Fax. Thus, no party has put forth any evidence that Mr. Kossoff instructed the IRS in writing to apply the Disputed Payment to cover the Reported Liability before the December 28, 2016 deadline imposed by I.R.C. § 6656(e).

"Absent specific instructions, the IRS is authorized to apply partial tax payments received on behalf of taxpayers 'to periods in the order of priority that the IRS determines will serve its best interest.'" *United States v. Cutler*, No. 02-CR-441 (LAP), 2021 WL 4993652, at *3 (S.D.N.Y. Oct. 27, 2021) (quoting Rev. Proc. 2002-26, 2002-1 C.B. 746, § 3.02). "If the taxpayer so identifies his payment as toward a particular tax year, the IRS will honor that request. If the taxpayer does not indicate the account to which the IRS should apply a payment, the IRS may apply it to the account the IRS determines will serve the best interests of the United States." *United States v. Wales*, No. 14 Civ. 864 (GWG), 2017 WL 2954683, at *7 (S.D.N.Y. July 11, 2017) (citing Rev. Proc. 2002-26, 2002-1 C.B. 746, §§ 3.01-02) (additional citations omitted).

Thus, as Mr. Kossoff did not timely express an intent in writing to allocate the Disputed Payment towards the Reported Liability, the Opponents essentially ask the Court to order that reallocation six and a half years later. This Court declines to do so. "[I]t is not within the purview of the courts to order a reallocation of tax payments, following an IRS designation." *Babcock v. United States*, 807 F. Supp. 2d 904, 914 (C.D. Cal. 2009) (citing *Davis v. United States,* 961 F.2d

27

867, 878 (9th Cir. 1992)). Thus, as the IRS had the authority to allocate the Disputed Payment as it did, the IRS's final reallocation of the Disputed Payment means the Reported Liability remained at least in part due and owing as of the Petition Date.

**F.  The Release of the Tax Lien Did Not Discharge the Debtor from its Tax Liabilities**

The Opponents argue that the filings of the Certificates of Release of Federal Tax Lien ("**CRFTL**") operated to extinguish the Reported Liability. Mr. Kossoff goes further and alleges the CRFTLs bar the IRS's assertion of the Assessed Liability as well. They cite I.R.C. § 6325(a)(1), "[T]he Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which [t]he Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable." They also cite the language in each CRFTL. *See* October 24, 2016 Fax from Anthony Tradachino to Mitchell H. Kossoff attaching October 17, 2016 Certificate of Release of Lien at 3 ("I certify that as to the following-named taxpayer, the requirements of section 6325(a) of the Internal Revenue Code have been satisfied for the taxes listed below and for all statutory additions."); October 26, 2016 Certificate of Release of Federal Tax Lien at 1 ("I certify that the following-named taxpayer, under the requirements of section 6325 of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions."). As further support, the Opponents cite the notice of the release provided to the Debtor. *See* September 12, 2018 Letter from M. Kossoff to Dept. of Treasury at 15.

However, precedent holds that the CRFTLs have no effect on either the Reported Liability or the Assessed Liability. "[T]he filing of a certificate of release does not extinguish the underlying tax liability." *United States v. Nassar*, No. 13 Civ. 8174 (ER), 2014 WL 5822677, at *10 (S.D.N.Y. Nov. 10, 2014) (citing *Boyer v. Comm'r,* 86 T.C.M. (CCH) 615 (T.C.2003)). "[A]lthough a

certificate of tax lien release is conclusive that the lien is extinguished, it is not conclusive that the tax liability is extinguished." *Boyer v. Comm'r*, 86 T.C.M. (CCH) 615, at *3 (T.C. 2003) (citing extensive list of cases). The Treasury Regulations say the same. Treas. Reg. § 301.6325-1(a)(1) (2008). ("In all cases, the liability for the payment of the tax continues until satisfaction of the tax in full or until the expiration of the statutory period for collection, including such extension of the period for collection as is agreed to."). The Court also takes judicial notice that the October 26, 2016 Certificate of Release of Federal Tax Lien, the release of lien in this case with language most helpful to the Opponents' argument, uses almost identical language to the publicly-recorded release of lien held insufficient to extinguish the underlying tax liability in *Nassar*. *Compare* October 26, 2016 Certificate of Release of Federal Tax Lien ("I certify that the following-named taxpayer, under the requirements of section 6325 of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions.") *with* Certificate of Release of Federal Tax Lien, IRS Form 668(Z), Serial No. 973375913 (Jan. 19, 2014), *recorded in* N.Y.C. Dep't of Fin., Off. of the City Reg., Doc. ID 2014012400617003 (Jan. 30, 2014) ("I certify that the following-named taxpayer, under the requirements of section 6325(a) of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions."). Lastly, to interpret the Internal Revenue Code to discharge the underlying tax liability upon the filing of a CRFTL would be incompatible or at least in tension with I.R.C. § 6325(f)(2), which provides for the revocation of a CRFTL. For these reasons, neither CRFTL had any effect on the Reported Liability or the Assessed Liability.

## G. The Payments the Debtor Made Could Not Prevent the Reported Liability From Reappearing After the IRS's Last Reallocation of the Disputed Payment

Mr. Kossoff posits that the Debtor's payments before the IRS shifted application of the Disputed Payment back to covering withholding and FICA taxes for the first quarter of 2016 fully

paid the Reported Liability such that the IRS may not revive it. He cites precedent that states "[w]hen a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied," *O'Bryant v. United States*, 49 F.3d 340, 347 (7th Cir. 1995), *quoted by Mildred Cotler Tr. v. United States*, 184 F.3d 168, 171 (2d Cir. 1999). However, he neglects to include the remainder of the sentence that shows the former quote's inapplicability, "and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability." *O'Bryant*, 49 F.3d at 347, *quoted by Mildred Cotler Tr.*, 184 F.3d at 171. Both cases involved the government's attempt to recover an erroneous refund through collection under a prior assessment. They have no application to this Debtor for that reason. The Internal Revenue Code, as explained by the Seventh Circuit in the *O'Bryant* case quoted by *Mildred Cotler Trust*, treats the recovery of erroneous refunds in special ways. *See O'Bryant*, 49 F.3d at 342-43, 346 (examining the methods by which the IRS may "recover an erroneous payment to a taxpayer" and ruling that the money refunded "cannot be recovered through the § 6502 post-assessment collection procedures" because "[i]t would not make sense to allow the IRS to use those procedures (which are premised on the taxpayer's not having paid his tax debt) to recover money it accidentally sent to the taxpayer").

In this case, the IRS did not issue a refund. The Debtor owed money to the IRS in 2016 under the March 28, 2016 Assessment. While that liability may have seemed satisfied at some point, it reappeared when the IRS reallocated the Disputed Payment to cover the Debtor's withholding and FICA taxes for the first quarter of 2016, as the IRS had authority to do. *Cf. United States v. Cutler*, No. 02-CR-441 (LAP), 2021 WL 4993652, at *3 (S.D.N.Y. Oct. 27, 2021) (observing that the shifting of a payment from covering tax liability in one year to covering tax

liability for another year would mean the first year's tax liability remains outstanding). As noted above, "the liability for the payment of the tax continues until satisfaction of the tax in full or until the expiration of the statutory period for collection." Treas. Reg. § 301.6325-1(a)(1). The IRS had the authority to allocate the Disputed Payment as it did, and the statutory period for collecting on the March 28, 2016 Assessment has remained open at all relevant times, *see* I.R.C. § 6502(a) (allowing collection of assessed taxes for ten years after assessment). With the Disputed Payment no longer covering the Reported Liability and the statutory period for collection still running, the Debtor remained liable for the Reported Liability, at least in part, through the Petition Date.

## H. The March 19, 2019 Assessment Is Valid

The Opponents argue that the March 19, 2019 Assessment was untimely. Their argument draws from both I.R.C. § 6501(a) and the Internal Revenue Manual. "[T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." *Id.* § 6501(a). In addition, for a CAWR audit, "[i]f the wages on the returns for a given year total less than the sum of the W-2 wages for that year **and the taxpayer does not respond to notices**, an increase in tax is made on the last available quarter of the year for that return." IRS-Combined Annual Wage Reconciliation (IRS-CAWR), IRM 5.1.15.7.2(2) (August 11, 2015) (emphasis added). The Opponents posit that because Mr. Kossoff did respond to the IRS's notice of the March 19, 2019 Assessment, *see* June 4, 2019 Letter from M. Kossoff to Dept. of Treasury, the IRS cannot impose "an increase in tax" for "the last available quarter" of 2015. *See* IRS-Combined Annual Wage Reconciliation (IRS-CAWR), IRM 5.1.15.7.2(2) (August 11, 2015). Thus, as they allege the Debtor's underpayment of withholding and FICA taxes occurred in the third quarter of 2015 (not the fourth), they argue that the IRS could not impose the March 19, 2019 Assessment for the fourth quarter of 2015, but rather must impose it for the third quarter of that year. They imply that the

March 19, 2019 Assessment would fall outside the three-year statute of limitations of I.R.C. § 6501 if made for the third quarter of 2015. This line of argument, if adopted, would present a programmatic challenge for the IRS, as the CAWR analysis process relies on comparing quarterly-filed Forms 941 to annually-filed Forms W-2 and W-3. IRS-Combined Annual Wage Reconciliation (IRS-CAWR), IRM 5.1.15.7.2(1) (August 11, 2015). Forms W-2 and W-3 do not break out the information they report by quarter. *See* Kossoff PLLC 2015 Form W-3; Compilation of Kossoff PLLC 2015 Form W-2s. Thus, when a CAWR analysis identifies a deficiency, it cannot assign that deficiency to a given calendar quarter.

The Opponents err in assuming that an inconsistency between the tax period listed in the March 19, 2019 Assessment and the tax period that perhaps should have been listed in that assessment per the Internal Revenue Manual can render that assessment invalid under I.R.C. § 6501's statute-of-limitations-type restrictions. At a minimum, the Opponents cite no caselaw commanding such a result. Sections 3101 and 3111 of Chapter 21 and Section 3402 of Chapter 24 of the Internal Revenue Code, which impose the taxes in question, do not impose them on a quarterly basis. *See* I.R.C. § 3101(a) (imposing the tax; nowhere mentioning quarterly incrementation); *id.* § 3111(a) (same); *id.* § 3402(a)(1) (not mentioning quarterly increments); *id.* § 3401(a) (flush language) (requiring payment of wages "be treated as having been made in the taxable year in which the amount is so includible"). An assessment listing a deficiency for one part of a tax year is not invalid just because the deficiency in fact pertains to a different part of such tax year. *See Wood Harmon Corp. v. United States*, 206 F. Supp. 773, 776–77 (S.D.N.Y. 1962), *aff'd*, 311 F.2d 918 (2d Cir. 1963); *Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 176 (3d Cir. 1978) ("A notice of a deficiency, even if it contains error, may nonetheless be valid where the taxpayer has not been misled as to the proper year involved or the amounts in controversy."); *Est. of Yaeger v.*

*Comm'r*, 889 F.2d 29, 35 (2d Cir. 1989) (citing *Wood Harmon Corp.*, 206 F. Supp. 773;

*Sanderling, Inc.*, 571 F.2d at 176).

Moreover, the statute of limitations for assessing these taxes runs from the return date as

defined by statute, not the end of the quarter in which the taxes accrued. I.R.C § 6501(a) ("[T]he

amount of any tax imposed by this title shall be assessed within 3 years after the return was filed.");

*id.* § 6501(b)(2) ("For purposes of this section, if a return of tax imposed by chapter 3, 4, 21, or 24

for any period ending with or within a calendar year is filed before April 15 of the succeeding

calendar year, such return shall be considered filed on April 15 of such calendar year."). Any

assessment of the Debtor's withholding or FICA tax liability for any quarter of 2015 would have

been timely under I.R.C. § 6501(a)'s three-year statute of limitations if made on March 19, 2019

as I.R.C. § 6501(b)(2) deems all the Debtor's Form 941 tax returns covering such 2015 liabilities

to have been filed on April 15, 2016. *See In re Becker*, 407 F.3d 89, 96 (2d Cir. 2005) ("As to

withholding taxes due with respect to a given calendar year, the statute of limitations begins to run

on April 15 of the following year." (citing I.R.C. § 6501(b)(2)). For this reason, the Court finds

the March 19, 2019 Assessment timely.

I.   **The IRS's Separate Assessments of the Reported Liability and the Assessed Liability Do
     Not Affect Their Validity.**

Mr. Kossoff deems the Assessed Liability invalid because the IRS did not assess it as a

supplemental assessment under I.R.C. § 6204(a) despite the Reported Liability being

outstanding. In his argument, "a second assessment is not permitted because the original

assessment still exists and 'there cannot be two valid assessments for the same tax liability.'"

*O'Bryant v. United States*, 49 F.3d 340, 343 n.6 (7th Cir. 1995) (quoting the IRS's brief in that

case). Numerous issues make that statement inapplicable or not an impediment to endorsing the

IRS's position. First, the section of the Internal Revenue Code that Mr. Kossoff cites describes itself as permissive, and it appears to authorize the steps the IRS took in this case. I.R.C. § 6204(a) ("The Secretary may, at any time within the period prescribed for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect."). Second, the IRS (unsuccessfully) took the position in *O'Bryant* that even payment of taxes does not extinguish an assessment. *O'Bryant*, 49 F.3d at 344 ("The IRS' position boils down to this: Because an assessment is merely a bookkeeping device to keep track of the tax a taxpayer owes for a given year (whether that tax has been paid or not), it is distinct from the taxpayer's tax liability and is not automatically extinguished when the taxpayer makes his payment. Rather, the assessment exists in perpetuity, and its existence permits the IRS to use its summary collection procedures to recover any shortfall as long as the ten-year time period set out in § 6502 has not expired."). The Seventh Circuit rejected that position in *O'Bryant*, and the government does not take it here. The Court notes that the district court opinion in *O'Bryant v. United States,* 839 F. Supp. 1321 (C.D. Ill. 1993) does not provide any more support for Mr. Kossoff's position than the Seventh Circuit's does. The Court further notes that *Johnson v. United States*, 123 F.3d 700 (2d Cir. 1997), also cited by Mr. Kossoff, does not help Mr. Kossoff at all; it nowhere holds that concurrent separate and distinct assessments for the same type of tax for the same period are per-se invalid.

Furthermore, even if the Seventh Circuit had ruled for the IRS in *O'Bryant* on the basis that the first assessment at issue in that case survived such that the IRS could not issue a second one, that ruling would not affect the Debtor's situation here. In *O'Bryant*, such a second assessment would not just have pertained to the exact same period and type of taxes as the first assessment, the second assessment would have dollar-for-dollar duplicated the first one. By

contrast, the March 28, 2016 Assessment and the March 19, 2019 Assessment, although made for the same period and pertaining to the same type of taxes, have no overlap. The former stems from taxes that the Debtor reported it owed on its Q4 2015 Form 941 and admitted not having paid, *see* Q4 2015 Form 941; March 8, 2016 IRS Notice, TX-27; the latter stems from taxes that the IRS assessed after finding that the Debtor underreported its employees' taxable wages, which the IRS discovered by performing a CAWR analysis, *see* March 19, 2019 Assessment; Tr. 139:14-140:1. Thus, the IRS's failure to describe the March 19, 2019 Assessment as a "supplemental assessment" has no effect on that assessment's validity. The March 19, 2019 Assessment remained outstanding through the Petition Date.

**J.   The Amendment Relates Back**

The Objectors argue that the IRS's Amended Claim impermissibly deviates from the Original Claim to such an extent that it constitutes a new, time-barred claim. This contention turns on the relation back doctrine and is incorrect. To relate back to an original claim, an amendment to a claim must "1) correct[] a defect of form in the original claim; 2) describe[] the original claim with greater particularity; or 3) plead[] a new theory of recovery on the facts set forth in the original claim." *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005) (internal citations omitted). "[I]f an amendment does, in fact, 'relate back' to the timely filed claim, courts will 'examine each fact within the case and determine whether it would be equitable to allow the amendment.'" *Id.* (quoting *In re Integrated Res., Inc.,* 157 B.R. 66, 70 (S.D.N.Y. 1993)).

The Amended Claim corrects a defect of calculation in the Original Claim; had the IRS properly calculated the amounts due to the government when it filed the Original Claim, the IRS would have included the March 28, 2016 Assessment. Thus, the amendment is consistent with the relation back doctrine's allowance for correction of a defect of form in an original claim. *See In re*

*Jackson*, 541 B.R. 887, 891-92 (B.A.P. 9th Cir. 2015) (taxing authorities regularly amend their proofs of claim after the claims deadline to reflect additional tax assessments relating to the same underlying liability); *In re Goodman*, 261 B.R. 415, 416-17 (Bankr. N.D. Tex. 2001) (IRS allowed to file its Second Amended Claim over two years after filing its original claim).

The circumstances here are dissimilar to one appellate decision that one might argue cuts against allowing the IRS to amend its claim here. That case is *In re Stavriotis*, 977 F.2d 1202 (7th Cir. 1992), in which the Seventh Circuit deemed not to relate back an IRS amended claim that was grossly disproportionate to the original claim — 220 times more than its original estimate, *see id.* at 1203 — and in which the IRS gave no explanation of its reason for the delay. The Amended Claim here has none of the hallmarks that the Seventh Circuit found unacceptable. The Amended Claim is comparable in size to the Original Claim, and the portion of the Amended Claim entitled to priority is also substantially like the portion of the Original Claim entitled to priority. *Compare* Original Claim at 4 *with* Am. Claim at 4. Thus, *In re Stavriotis* has no application here. Rather, the Original Claim shows "a 'timely assertion of a similar claim or demand evidencing an intention to hold the estate liable,'" *In re Enron Corp.*, 419 F.3d at 133 (quoting *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)), so the Amended Claim relates back to the Original Claim.

Further, allowing the amendment would be equitable as to the general body of creditors because the Debtor's Schedules anticipated an IRS claim of roughly the amount of the Amended Claim, despite the Schedules listing that claim as disputed. *See* Am. Schedules, Addendum at 4, ECF No. 359. Neither the IRS nor any other creditor stand to "receive a windfall" from allowance of the Amended Claim. *In re Enron Corp.*, 419 F.3d at 133 (using this criteria to evaluate whether allowance of an amendment would be equitable). In fact, the size of the IRS claim matters little if at all to the adversary proceeding defendants; the existence of a triggering creditor's claim, not its

size, gives the Trustee the power to bring the adversary proceedings. *See Tronox Inc. v. Anadarko Petroleum Corp.* (*In re Tronox Inc.*), 464 B.R. 606, 616 (Bankr. S.D.N.Y. 2012) ("Section 544(b) of the Bankruptcy Code adopts the ruling of the Supreme Court in *Moore v. Bay*, where the Court allowed a trustee to avoid a fraudulent transfer without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting, with the rights of the trustee 'to be enforced for the benefit of the estate.' Because a trustee's recovery under § 544(b) is governed by § 550, it follows that Congress intended to incorporate *Moore's* rule of complete avoidance into § 550." (citing *Moore v. Bay*, 284 U.S. 4 (1931) (quotations and additional internal citations omitted))).

## CONCLUSION

For the above reasons, the Court grants the Motion and overrules all objections to it. The Court hereby determines the amount of the IRS's claim to be as set forth in the Amended Claim. The Trustee is to submit a proposed order to that effect on notice.

Dated: New York, New York
       February 14, 2025

                         *s/ David S. Jones*
                         Honorable David S. Jones
                         United States Bankruptcy Judge